Syllabus.

## Richmond

### BAYLY AND OTHERS V. CURLETTE AND OTHERS.

March 11, 1915.

Absent, Kelly, J.*

1. WILLS—*Construction—Heirs.*—The word "heirs" as used in the will under consideration is used as synonymous with "children."

2. JUDGMENTS—*Res Judicata—When Second Suit Not Barred—Case in Judgment.*—While it is a matter of public interest that there shall be an end of litigation, that consideration cannot be allowed to deprive a litigant of an opportunity to submit his cause to a competent tribunal for hearing and judgment. Where the issues involved in a second suit were neither within the pleadings nor evidence in the first, and especially, where, as in the case in judgment, the facts and circumstances upon which the issues in the second suit are founded had no existence when the first was brought, but have subsequently arisen, the second suit is not barred by the first.

3. WILLS—*Gift to Children of Living Man—Partition in His Lifetime.*—Under a will devising real estate to the children, born and to be born, of a living man, to be managed by him for their benefit during his lifetime, and in the event of his death, to remain undivided until the youngest child shall be 21 years old, there can be no division of the principal of the estate during the lifetime of the father of the children, although the birth of a child to him in the future be a remote possibility.

4. WILLS—*Gift to Children Share and Share Alike—Blended Trust.* A will such as is mentioned in the preceding paragraph but which declares that the children are to take "share and share alike" does not create a blended trust in the property, the income from which is to be distributed among the children according to the discretion of the trustee.

5. TRUSTS AND TRUSTEES—*Accounting—Present Right to Profits.—After-Born Children.*—Where the rights of claimants of property in the hands of a trustee are fixed, subject only to open

---

* Argued before Judge Kelly's term began.

up and let in after-born children, they have a present right to demand an accounting by the trustee for their proportion of the income from the estate.

Appeal from a decree of the Circuit Court of Fauquier county. Decree for the defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*Keith & Richards,* for the appellants.

*Lucien Keith, William Horgan* and *John S. Barbour,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

Susan Qualls Curlette died in the year 1879, leaving a will, the provisions of which, so far as pertinent to this controversy, are as follows:

"I give and devise to my grandchildren the present heirs and those that may hereafter be of my son Benjamin Elliott Curlette of Warrenton, Fauquier county, State of Virginia, my farm on which I now live called Waverly—containing by survey 239¼ acres, to them the said heirs of B. Elliott Curlette. I also devise and bequeath all the rest and residue of my estate both real and personal to the above said heirs for their education and maintenance to share and share alike and I hereby appoint my son B. Elliott Curlette, trustee to manage for the above said heirs. I also appoint my son B. Elliott Curlette my executor to take in charge all my property both real and personal, and manage it according to his best judgment for his heirs so long as he may live and in the event of his death the property is to remain undivided until the youngest child shall be 21 years old—the court to appoint a suitable trustee to fill B. Elliott

Curlette's place. I also devise and bequeath to the above named children of B. Elliott Curlette my share of undivided lands in the State of Missouri. * * * I do hereby appoint my son B. Elliott Curlette trustee to take in charge my Missouri lands to be equally divided between the heirs as above of the said B. Elliott Curlette. * * * "

It is obvious that the testatrix uses the word heirs in her will as synonymous with children, and that the references therein to the heirs of B. Elliott Curlette are to his children.

Upon the death of his mother, B. Elliott Curlette probated the will, and, having qualified as executor and trustee, took possession of the estate. His seven children, the beneficiaries under the will, dwelt with him on the home farm, "Waverly," until the year 1889. At that time four of the children became dissatisfied with his demeanor toward them and his management of the estate, and filed a bill in equity in the circuit court of Fauquier county charging the trustee with gross abuse of the trust imposed upon him by the will and mismanagement of the property, and praying for his removal as trustee. At the hearing of the cause, the honorable James Keith, at that time judge of the circuit court but now and for many years the president of this court, made substantially the following findings: 1. That the trustee had executed his trust with respect to the care and management of the trust property with reasonable discretion and fidelity. 2. But that his relations with the beneficiaries under the will were not satisfactory. That his conduct in that regard, due to his frequently being under the influence of liquor, had been rude and disagreeable to his children, and had introduced discord into the family. Yet when sober he was pleasant and sociable. That part of the family adhered to him, while others desired his removal. His honor then observes: "In this state of affairs my opinion is, and I shall direct a decree to be entered to

this effect: 1st. That the members of the family who have seen fit and proper to leave the trust estate and seek homes elsewhere be invited to return; 2nd. That the injunction be dissolved and the receiver discharged; 3d. That the trustee * * * be restored to the discharge of his duties as trustee under his mother's will; 4th. That continued intemperance tending to disturb the family relations intended to be secured by the will of his mother and rendering the trust estate neither comfortable nor agreeable as a safe place of abode to the *cestuis que trustent* will be treated by the court as a sufficient ground for his removal and for the appointment of a trustee in his place and stead, and, to this end; that, 5th. This cause be placed on the suspended docket with leave to any party to apply for further relief upon the principles hereinbefore announced." And it was so decreed.

From the date of that decree to the present time, the trustee has continued in possession of the trust property, for most of the time in the sole occupancy thereof, and enjoying the beneficial use of the estate. In the meantime, all the *cestuis que trustent* have died—four out of the seven childless and intestate, and their shares in the trust estate have passed, under the statute of descents and distributions, to their father, B. Elliott Curlette. H. Clay Bayly, Sr., married two of the daughters, both of whom died leaving children. In the year 1913, Bayly and his children filed their bill in the present case against B. Elliott Curlette, the trustee, and the widow and children of William S. Curlette, deceased, who was one of the beneficiaries under the will. The bill charges that none of the plaintiffs has received any part of the shares of their parents in the trust estate, and prays that the will be construed and that their interests in the property be ascertained. It likewise prays for an accounting by the trustee, showing the corpus of the estate,

and the income in his hands derived therefrom and the shares of the plaintiffs therein, and for other relief.

From a decree of the circuit court sustaining the plea of the defendant, B. Elliott Curlette, that the rights of all parties in respect to all of the property which passed under the will of Susan Qualls Curlette had been adjudicated in the former suit of *Curlette* v. *Curlette,* except the Missouri property, and denying the relief prayed for, this appeal was allowed.

We are of opinion that the issues involved in the present case were neither within the pleadings nor evidence in the original suit. Indeed, the facts and circumstances upon which these issues are founded had no existence at that time, but have subsequently arisen. Hence, from the nature of things, the matters here involved could not then have been brought forward for adjudication. It is true that it is matter of public interest that there shall be an end to litigation, but that consideration cannot be allowed to deprive a litigant of the opportunity to submit his cause to a competent tribunal for hearing and judgment. In the former suit all the conditions were present which existed at the date of testatrix's will and at the time of her death. The trustee and all his children were then living, and the home "Waverly," intended as an abode for the children, was intact. In these circumstances, the chancellor (bearing in mind the dominant purpose of the testatrix to keep the family together) endeavored to effectuate that object by directing a decree, the tendency of which was to compose the differences between the children and their father and trustee. There was no intimation by the court, however, that the will conferred any property rights in the trust estate upon B. Elliott Curlette, or that his powers in relation thereto differed in any respect or degree from those of any other trustee that might be appointed under the will to succeed him.

It is quite clear that the court was of opinion that the trustee was removable for mismanagement of the property, or for misbehavior in his intercourse with the children; yet, upon the evidence, that the charge of maladministration with regard to the property had not been sustained. While on the second charge, the trustee (who had been removed) was restored to office with the admonition that continued intemperance on his part, or such other misconduct as would tend to disturb the family relations or render the abode secured to the children by the will of their grandmother uncomfortable or unsafe, would be considered sufficient ground for his permanent removal.

The present case, as we have seen, presents a wholly different situation. The *cestuis que trustent* have all died, and the father has acquired by inheritance the shares of four of the children in the estate. Title to the shares of the remaining children, upon their death, devolved upon their children who are the present owners. Subject to the remote possibility of the birth of a future child to B. Elliott Curlette, the objects of the trust have ended. Nevertheless, under the will, the division of the principal of the estate must be postponed during the lifetime of B. Elliott Curlette to await that possible contingency. The right of the present claimants to the shares of their respective parents is fixed, subject only to open up and let in any other children which may be born to B. Elliott Curlette.

Though the appellants have no right under the will to occupy the ancestral home as a place of abode, the income from two-sevenths of the entire trust estate belongs to them and not to the trustee, and they have the present right to demand an accounting by the trustee for their proportion of such income, at least, from the date of the death of his last child, which occurred in the year 1910. Though it is true that the original beneficiaries were entitled to enjoy the estate, in a sense, jointly, the will did not create a

*blended trust* in the property, the income from which was to be disbursed among them according to the discretion of the trustee, as in *Nickell* v. *Hanley,* 10 Gratt. (51 Va.) 336, and that class of cases, but they were to take "share and share alike"; and the Missouri lands were also "to be equally divided between them." So that, in that respect, the rights of the present claimants are controlled by the case of *Baldwin's Ex'x* v. *Baldwin,* 76 Va. 345.

For the foregoing reasons the decree under review must be reversed and annulled, and the case remanded for further proceedings to be had therein not in conflict with the views expressed in this opinion.

*Reversed.*