**LYNCHBURG TRUST & SAVINGS BANK et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3541.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1934.

Thomas J. Williams, of Lynchburg, Va. (Paul E. Sackett, of Lynchburg, Va., on the brief), for petitioners.

J. P. Jackson, Sp. Asst. Atty. Gen. (Sewall Key, Sp. Asst. Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals, adjudging deficiencies in income taxes against petitioners in the amounts of $202.43, $843.19, $265.55, and $331.54 for the respective years 1926, 1927, 1928, and 1929. The case involves the right of petitioners to deduct in their fiduciary returns, under section 219 (b) (2) and (3) of the Revenue Act of 1926 (44 Stat. 9, 33), and under section 162 (b) and (c) of the Revenue Act of 1928 (45 Stat. 791, 838, 839, 26 USCA § 2162 (b) (c), certain amounts withheld or accumulated for beneficiaries of the trust.

An agreed statement, which was adopted by the board as its findings of fact, discloses that petitioners, Lynchburg Trust & Savings Bank, James R. Gilliam, Jr., and Elsie West Gilliam, are trustees under the will of T. W. Gilliam, a resident of Lynchburg, Va., who died February 3, 1924, leaving a daughter, Elsie West Gilliam, and two grandchildren, W. G. Younger and E. F. Younger, children of a deceased daughter, aged fifteen and eleven years, respectively. The will provides in detail for the payment of many legacies, and then in item V gives and bequeaths all the rest and residue of the testator's property to the trustees upon the following trusts. The trustees are given authority, in their discretion, to sell all but certain enumerated realty and all personalty and to invest and reinvest the proceeds in such safe and profitable property, real or personal, as they may deem most advantageous to the beneficiaries. It is then provided that the net income from this fund shall be divided into two equal parts, one of which shall be paid in quarterly installments to the testator's daughter, Elsie West Gilliam, during her life, with certain limitations over upon her death, which are not here material. The provision for the two grandchildren follows:

"(c) The other half of the net income arising from the fund provided for by this Item shall, subject to the provision hereinafter contained in Item VII, be paid over to my grandchildren, the children of my daughter, Grace, and Dr. E. F. Younger, or to the survivor of them, if one die without descendants. These payments are to continue till the youngest of my grandchildren, or the survivor of them, attain the age of thirty years, when the portion of my estate on which my said grandchildren received the income is to be paid over to them in equal parts. If either of my grandchildren die leaving descendants, the share of the parent both of income and principal is to go to such descendants, and if he leave none, then his share of the principal and income is to go to his brother, or such brother's descendants, if the brother be dead leaving descendants, and if none, then to my daughter, Elsie West Gilliam, if she be living, and if she be dead leaving a descendant or descendants, then to such descendant or descendants, and if none, then to my heirs and distributees under the laws of the State of Virginia.

"All payments of income herein provided for are to be made quarterly, and it is my object that the payment both of income and principal, whether made to the first taker or to the remainder-men, shall be at the times and in the manner herein provided for and that all distributions shall be per stirpes, and that on the death of my daughter without descendant or descendants living, her share both of income and the principal from which it is derived shall pass to my grandchildren or their descendants, and on the death of either of my grandchildren without descendants, his income and the principal from which it is derived shall pass to the other grandchild or his

descendants, and on the death of both my grandchildren without descendants, their income and the principal from which it is derived shall pass to my daughter, Elsie West Gilliam, or her descendants, if she be dead leaving any, and on the death of my daughter and my two grandchildren without a descendant or descendants, then all the residuum of my estate is to pass to my heirs and distributees under the laws of the State of Virginia. Whenever the word 'descendants' is used in this will it shall have the same meaning as though 'descendant or descendants' had been used."

Item VII, referred to in paragraph (c) of item V above, after naming petitioners both executors and trustees, provides:

"I authorize my executors, or the survivors of them, or the one qualifying, to hold back and invest from the income of my two grandchildren, or either of them, such portion of said income as they may think advantageous, such investments to be made as hereinbefore provided for, or in the improvement of the property of such grandchildren."

The trustees named qualified under the will, and have administered the trust of the residue of the estate from 1924 to the present time. Elsie West Gilliam is the guardian of both grandchildren. During the period from 1924 to the end of 1929, the total net income of the trust estate amounted to $301,424.66, of which $150,712.34 was at proper times paid to Elsie West Gilliam in her own right, and the balance, $150,712.32, was in part paid to her as guardian of the two grandchildren, and in part withheld and reinvested for their benefit under item VII of the will. A total of $7,050 was paid to the guardian during that time for E. F. Younger, $14,640 was paid to her for W. G. Younger, and the amounts withheld and reinvested for each grandchild varied accordingly, $68,306.16 being reinvested for E. F. Younger and $60,716.16 for W. G. Younger. The amounts so withheld have been kept entirely separate by the trustees, both from the corpus of the main trust of the residue of the estate, and from each other, separate accounts being kept as to each fund and the income earned on each fund, and separate investments being made except as to certain investments in securities for the joint benefit of E. F. and W. G. Younger, in which each has a one-half interest. Altogether, the securities held for their joint benefit at the close of 1929 amounted to $56,545.91, those held for the benefit of E. F. Younger alone to $37,-157.82, and those held for W. G. Younger to $27,392.58; while there was uninvested cash

held for them of $9,437.75 and $11,560.22, respectively. The fund held for E. F. Younger has thus increased from $68,306.16, the total amount withheld, to $74,868.53, and that held for W. G. Younger from $60,716.16 to $67,225.75, the difference in each case representing income earned by the particular fund during the period.

For each of the taxable years in question the trustees filed, besides their fiduciary return as trustees of the residue, or the main trust, separate fiduciary returns as trustees for E. F. and W. G. Younger, respectively, contending that subsidiary trusts of the withheld income were created by the will and that there were thus three trust entities for the purpose of taxation. Deductions were taken in the return for the main trust not only of the amounts paid to Elsie West Gilliam in her own right and as guardian for the grandchildren, but also of the amounts of income withheld for the benefit of the grandchildren, so that as a result the entire income of the trust was offset by these deductions and no tax was payable upon the main trust. Income tax returns, covering the amounts received, were, however, made by Elsie West Gilliam, the daughter, and by the guardian for each of the grandsons, and by the trustees for each of the subsidiary trusts with respect to the retained portions of the grandsons' income. The Commissioner denied the propriety of separate returns, and assessed the deficiencies involved in this case. The first two deficiency letters stated that the basis of the reassessment was that there was but one trust created by the will, but the matter was somewhat confused by the fact that the letters were addressed to the petitioners as trustees, trust for W. G. and E. F. Younger. This form was doubtless used because the trustees had filed separate returns as trustees for W. G. Younger and E. F. Younger respectively. The same title has been retained throughout the proceedings before the Board of Tax Appeals and in the petition filed in this court; but it is clear that both the Commissioner and the board took the position that only a single trust was involved.

 It is suggested by the taxpayer as one alternative that the amounts withheld by the trustees out of the shares of the income allotted to the grandchildren under the will, while not paid to them or to their guardian, have nevertheless been credited to them, and therefore constitute a deduction which the trustees are entitled to make in their income tax return for the trust estate of the residue. Section 219 (a) of the Revenue Act of 1926 pro-

vides for the imposition of a tax upon income of estates held in trust, including income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by the guardian of an infant (section 219 (a) (2), and income which in the discretion of the fiduciary may either be distributed to the beneficiaries or accumulated (section 219 (a) (4). Section 219 (b) (2), however, provides that there shall be allowed as a deduction in computing the net income of a trust, the amount of the income which is to be distributed currently by the fiduciary to the beneficiary, and the amount of income collected by a guardian of an infant, but the amount so deducted is to be included in computing the net income of the beneficiaries whether distributed to them or not; and section 219 (b) (3) adds that in case of income which in the discretion of the fiduciary may either be distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the trust the amount of the income which is properly paid or credited during the taxable year to any legatee, heir or beneficiary, but the amount so allowed as a deduction is to be included in computing the net income of the legatee, heir or beneficiary. Similar provisions are found in section 162 (b) and (c) of the Revenue Act of 1928, 26 USCA § 2162 (b) (c).

Thus, it is clear that provision is made both for income which it is the duty of the fiduciary to pay out or distribute to beneficiaries during the current year, and also for income which the fiduciary may in its discretion either distribute to the beneficiaries or accumulate. In the first case, the whole of the income may be deducted in computing the net taxable income of the trust, whether it is actually distributed or not, but the beneficiary must include the amount of the deduction in computing his own net income, whether he actually received it or not, that is to say, whether it is paid to him or credited to him by the trustees. In the second instance, only that part of the income which is paid or credited during the year may be deducted from the income of the trust and added to that of the beneficiary. The phrase "paid or credited" is used in opposition to the term "accumulated"; so that, the amount which is set aside for and made available to the beneficiary, either by actual payment or by credit, may be deducted, but the amount retained or accumulated forms part of the taxable income of the trust.

A similar construction of the same language in the corresponding sections 161 (a) and 162 (b) of the Revenue Act of 1928, 26 USCA §§ 2161 (a), 2162 (b), was given by the Circuit Court of Appeals in the Second Circuit in Commissioner v. Stearns, 65 F.(2d) 371, 373. Speaking of the portions of the income respectively taxable to the fiduciary and the beneficiary, the court said:

"They should appear in the fiduciary's return, if they are still his; in the beneficiary's, only in case he has become presently entitled to them, or received them.

"This serves to determine what is meant by the word, 'credited,' the alternative to 'paid,' though we can find no authority on the point. The income must be so definitively allocated to the legatee as to be beyond recall; 'credit' for practical purposes is the equivalent of 'payment.' Therefore, a mere entry on the books of the fiduciary will not serve unless made in such circumstances that it cannot be recalled."

Compare Ordway v. Wilcutts (D. C.) 12 F.(2d) 105; Id. (C. C. A.) 19 F.(2d) 917.

We agree with this interpretation, and hence we conclude (ignoring for the moment the contention, to be presently considered, that the withheld income was paid or credited to the subsidiary trusts as beneficiaries) that the withheld income of the grandchildren may not be deducted in computing the net income of the trust estate as amounts credited to the grandchildren or their guardian. For although the moneys were retained for the benefit of the grandchildren and became part of the fund ultimately to be paid to them or to their descendants, or to the cross-remaindermen named in the will, they were not credited in the sense that they were made available to the grandchildren or their guardian during the current taxable year. Taxpayers generally are charged with income not reduced to possession, but only if it may be said that the income is received constructively, and has become so far subject to the taxpayer's demand that its nonreceipt is a matter of his own choice. See Rosenwald v. Commissioner, 33 F.(2d) 423 (C. C. A. 7th), certiorari denied 280 U. S. 599, 50 S. Ct. 69, 74 L. Ed. 644; cf. Hart v. Commissioner, 54 F.(2d) 848 (C. C. A. 1st); Commissioner v. R. J. Darnell, Inc., 60 F.(2d) 82 (C. C. A. 6th); Commissioner v. Cleveland Trinidad Pav. Co., 62 F.(2d) 85 (C. C. A. 6th).

This conclusion, however, does not meet the argument upon which the taxpayer chiefly relies, to wit, that under the will, three separate and distinct trusts were set up as follows: (1) A trust for the residue of the es-

tate covering the corpus as it existed at the time of the testator's death, and such reinvestments thereof as may have been made from time to time thereafter; (2) a trust for that part of W. G. Younger's share of the income from the residue which the trustees may withhold in the exercise of the discretion conferred upon them under the will, and such reinvestments thereof as may from time to time be made; (3) a similar trust for so much of E. F. Younger's share of the income from the residue as the trustees may withhold. The government contends on the other hand that the testator meant to create only one trust fund with several beneficiaries, and not a separate trust fund for each beneficiary; and that this purpose is manifested by the reference in item V (a) of the will to sales of property by the trustees and the reinvestment of the proceeds for the benefit of "this trust," and in items V (b) and V (c) to the division of the net income from "this fund," that is, the residue of the estate. So it is said that the will did not contemplate the division of the corpus of the residue into separate trust funds, but left it in its entirety in the control of the trustees named in the will, and hence the tax on the income attached before distribution, and was payable by the trustees in the same manner as a taxpayer, who retains ownership and control of his property but assigns a portion of the income therefrom, is considered the recipient of the entire income and required to pay the whole tax thereon. See Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665; Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916; Bing v. Bowers (D. C.) 22 F.(2d) 450; Id. (C. C. A.) 26 F.(2d) 1017; Rosenwald v. Commissioner (C. C. A.) 33 F.(2d) 423.

This argument, while sound enough, ignores the real point in the case, for the taxpayer does not deny that the income from the residue is taxable as an entirety to the trustee. The claim is that although the income must be reported in the trustees' return, a deduction may be taken under the law not only for the one-half of the income payable to the daughter of the testator, but also, under section 219 (b) (3) of the Revenue Act of 1926, and section 162 (c) of the Revenue Act of 1928, 26 USCA § 2162 (c), for the one-half of the net income allotted to the grandchildren as income paid or credited to a legatee or beneficiary. So much of this second half as was paid or credited to the guardian of the grandchildren is conceded to be a proper deduction. The difference arises as to whether that part of the grandchildren's income retained may be said to have been separated from the residue of the estate and paid or credited to the fiduciaries, not as trustees holding the corpus of the residue, but as trustees holding retained portions of the income under separate trusts for the benefit of the two grandchildren. If the latter alternative correctly describes the situation, the retained portions must be considered as paid or credited to a legatee or beneficiary, because these terms are broad enough to include not only individual owners, but also those to whom income is paid or credited in trust.

The case must therefore be decided by determining whether the testator intended that the retained income of the grandchildren should be held in the same trust as the corpus of the residue or in separate trusts. There can be no doubt that he intended that the grandchildren should take equal shares in the income from the residue, although there is no express provision to this effect in the will. It directs that one-half of the net income arising from the residue shall be paid over to the grandchildren until the younger attains the age of thirty years, when the portion of the estate from which they received the income is to be paid over to them in equal parts. This equal division of one-half of the corpus between the grandchildren, the equal division of the whole income between one child and the children of another, and the distribution of principal and income per stirpes in certain other contingencies, furnish a substantial basis for the application of the general rule that if the meaning of a will is doubtful, that construction will be adopted which will place members of the same class upon terms of equality. See Nichols v. Nichols, 126 Va. 49, 52, 100 S. E. 826; Penick v. Lewis, 194 Ky. 231, 238 S. W. 745; Matter of Harden, 177 App. Div. 831, 164 N. Y. S. 1014, 1017, affirmed 221 N. Y. 643, 117 N. E. 1069.

This construction of the will has in fact been adopted by the trustees from the beginning in the equal division of one-half of the income from the residue between the grandchildren. Moreover, as we have seen, a separate account has been set up for the portion of the income withheld from each grandchild and the investment thereof by the trustees. This method would naturally be adopted by any one who wished to insure to each grandchild his equal share in the estate. The amounts withheld in the discretion of the trustees were of necessity unequal, by reason of the difference in the ages of the grandchildren, a situation which the testator must have had in mind. It would have been well-nigh impracticable to have ascertained accurately

at any particular time the respective percentage to which each grandchild would have been entitled in a common fund, in view of the constant additions of varying sums and the changing valuations of the real and personal property constituting the corpus, involving as it would, the uncertainty of frequent appraisals. This difficulty would have been very greatly increased if the withheld portions of the income had been added to the corpus of the residue, for the testator did not intend that his daughter should share in the income to be earned from the investment of the withheld portions, and the same necessity for ascertaining the respective interests of the grandchildren would have arisen.

We think that it was the intention of the testator to separate the income of the residue therefrom, and that when the income was divided in proportion to the respective interests of the beneficiaries, it ceased to be a part of the residue and was set aside in three parts, one-half for the child, and one-quarter for each grandchild. The portions distributed to the child and to the guardians of the grandchildren were delivered free from the trust, and the retained portions were no longer held in trust for the purposes set out in the will in regard to the residue. On the contrary, each retained portion was held in trust for the benefit of the child from which it was withheld. The power conferred upon the trustees by item VII of the will to hold back and invest a part of this income, as theretofore provided in the will, does not mean that the reinvested portions become a part of the residue, but merely that the trustees have power to invest the retained portions in safe and profitable property, real and personal, in the same manner as they were empowered to invest the proceeds of the corpus of the residue sold in accordance with the terms of the will. Moreover, there is an express recognition of the separate character of the retained income of the grandchildren in item VII of the will which empowers the trustees, if they see fit, to invest the income in the improvement of the property of the grandchildren. This expression would have no meaning if applied to unidentified shares of the grandchildren in the common fund constituting the residue of the estate. It must have referred either to property of the grandchildren outside of the estate (as to the existence of which the record is silent), or to the retained portions of the income as invested by the trustees. In either case, a separate holding of the retained income in trust must have been contemplated.

Compare State Sav. Loan & Trust Co. v. Commissioner (C. C. A.) 63 F.(2d) 482; Titsworth v. Titsworth, 107 N. J. Eq. 436, 152 A. 869; Robert W. Johnson, Jr. et al. v. United States, 65 Ct. Cl. 285.

It will have been noticed that there is no express provision in the will for the final distribution of the accumulated income. The directions in item V governing the distribution of principal and income in certain contingencies relate to the corpus of the residue and the income accruing thereon between quarterly payments, and nothing is said about the distribution of the property in which the accumulated income has been invested. In similar situations, the question has sometimes arisen as to whether the beneficiary takes a vested interest in the accumulated income or whether, on the other hand, the accumulations are to be held as part of the corpus subject to the terms of the trust imposed thereon. In Burt v. Gill, 89 Md. 145, 42 A. 968, 43 A. 177, a will was construed under which money was left in trust for a daughter of the testator with directions to the trustee to apply the income or so much thereof as was necessary to her support until she should attain the age of eighteen years, and thereafter to pay her the whole income, the corpus of the property to be given over to her issue after her death. It was held after she had reached the age of eighteen that the income accumulated in the meantime belonged absolutely to her free from trust, since the will manifested an intent to dedicate all of the income to her use as long as she lived and to preserve only the corpus for her issue. See, also, Endicott v. Rector, etc., of University of Va., 182 Mass. 156, 65 N. E. 37; Rhode Island Hospital Trust Co. v. Noyes, 26 R. I. 323, 58 A. 999; cf., Thurber v. Thurber, 43 R. I. 504, 112 A. 209; Jaretzki v. Strong, 98 Conn. 357, 119 A. 353. The decision in each instance turned upon the intention of the testator as disclosed by the will. So, in the pending case, we hold that the accumulated income, although intended to be withheld from the grandchildren until the youngest should reach the age of thirty years, was meanwhile held for their individual benefit in two separate trusts apart from the corpus of the main trust.

The decision of the Board of Tax Appeals must therefore be reversed and the case remanded in order that the taxes in question may be redetermined in accordance with this opinion.

Reversed and remanded.